UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEVIN PAUL PASTORE

                                  Plaintiff,

        v.

ANDREW M. SAUL,[1] Commissioner of
Social Security,

                                  Defendant.

**DECISION
and
ORDER

18-CV-01077-LGF
(consent)**

_____

APPEARANCES:        LAW OFFICES OF PUSATIER, SHERMAN, ABBOTT &
                                   SUGARMAN, LLP
                                   Attorneys for Plaintiff
                                   RICHARD G. ABBOTT, of Counsel
                                   2464 Elmwood Avenue
                                   Kenmore, New York 14217

                                   JAMES P. KENNEDY, JR.
                                   UNITED STATES ATTORNEY
                                   Attorney for Defendant
                                   Federal Centre
                                   138 Delaware Avenue
                                   Buffalo, New York 14202;

                                   EMILY MAXINE FISHMAN
                                   Special Assistant United States Attorney, of Counsel
                                   Office of the General Counsel
                                   26 Federal Plaza, Room 3904
                                   New York, New York 10278, and

                                   FRANCIS D. TANKARD, and
                                   JOLETTA MARIE FRIESEN
                                   Office of the General Counsel
                                   Social Security Administration

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this suit with no further action required to continue the action.

Office of the General Counsel
601 E. 12th Street, Room 965
Kansas City, MO 64106, and

**JURISDICTION**

On October 7, 2019, this case was reassigned to the undersigned before whom the parties consented pursuant to 28 U.S.C. § 636(c), to proceed in accordance with this Court's June 29, 2018 Standing Order. (Dkt. No. 14). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on April 10, 2019, by Plaintiff (Dkt. No. 8), and on June 19, 2019, by Defendant (Dkt. No. 13).

**BACKGROUND and FACTS**

Plaintiff Kevin Pastore ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Commissioner of Social Security ("the Commissioner" or "Defendant"), decision denying his application for Child's Social Security Disability Insurance ("SSDI"), and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Act ("disability benefits"). Plaintiff, born on June 30, 1994 (R. 70),[2] has a high school education, and alleges that he became disabled on June 1, 2013, because of visual and auditory hallucinations, limited short term memory, poor concentration, attention deficit hyperactivity disorder ("AHDH") impulsivity, and an

---
[2] "R" references are to the pages of the Administrative Record electronically filed by Defendant on February 15, 2019 (Dkt. No. 7).

inability to communicate effectively and manage his general personal hygiene. ("R. 188).

Plaintiff's application for disability benefits was initially denied by Defendant on May 26, 2015 (R. 90), and, pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Timothy M. McGuan ("Judge McGuan"), on July 6, 2017, in Buffalo, New York, where Plaintiff, represented by Stephen Pusatier, Esq. ("Pusatier") appeared and testified. (R. 33-55). Vocational Expert Dawn Blythe ("the VE" or "VE Blythe"), also appeared and testified along with Plaintiff's mother Robin Pastore ("Ms. Pastore"). (R. 48-57). The ALJ's decision denying Plaintiff's claim was rendered on September 18, 2017. (R. 15-25). Plaintiff requested review by the Appeals Council, and on August 22, 2018, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-4). This action followed on October 2, 2018, with Plaintiff alleging that the ALJ erred by failing to find him disabled. (Dkt. No. 1).

On April 10, 2019, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 8-1) ("Plaintiff's Memorandum"). Defendant filed, on June 19, 2019, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 10-1) ("Defendant's Memorandum"). Oral argument was deemed unnecessary.

**DISCUSSION**

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error. *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

**A.** **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be

affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[3] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[4] 42 U.S.C. §§

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[4] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's residual functional capacity ("RFC"), and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

In this case, the ALJ determined that Plaintiff had the severe impairment of schizophrenia versus schizoaffective disorder. (R. 18). The ALJ further determined that Plaintiff's impairments do not meet or medically equal a listed impairment, and that Plaintiff had the RFC to perform work at all levels of exertion with limitations to unskilled work with little public contact (R. 20) and has no past relevant work. (R. 24). Plaintiff does not contest the ALJ's findings at steps one through three of the disability review process but contends that the ALJ erred in evaluating Plaintiff's residual functional capacity assessment and Plaintiff's credibility.

**B. Residual functional capacity**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv) and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's

"residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

The Second Circuit requires that all complaints . . . must be considered together in determining . . . work capacity. *DeLeon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir. 1984). Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual

functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job. *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.

Here, the ALJ found that Plaintiff had the residual functional capacity to perform work at all physical levels of exertion with limitations to simple, unskilled work with little interaction with the general public (R. 20), afforded little weight to the testimony of Plaintiff's mother Ms. Pastore (R. 23), some weight to the findings of Plaintiff's treating psychiatrist Robert Whelpley, M.D. ("Dr. Whelpley") who, upon completing a Mental Residual Functional Capacity Assessment on Plaintiff on March 6, 2017, noted that Plaintiff was severely limited in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (R. 23-24) (referencing 257-58). In discounting Dr. Whelpley's finding, the ALJ, in contrast, afforded great weight to the opinion of consultative examiner Robert Maiden, Ph.D., ("Dr. Maiden"), who on April 4, 2015, opined that Plaintiff was able to follow and understand simple directions and instructions and perform simple tasks independently, but was unable to maintain a regular schedule, make appropriate

9

decisions, or relate well with others, and lacked motivation to focus or learn complex tasks independently without supervision (R. 24) (referencing 252-53), and some weight to the opinion of T. Harding, Ph.D., ("Dr. Harding"), a disability review psychologist at the initial level of disability determination who, on May, 21, 2015, reviewed Plaintiff's records finding that Plaintiff had a mild restriction to activities of daily living, and moderate difficulties in maintaining social functioning, concentration, persistence or pace (R. 24) (referencing R. 66-67).

Plaintiff alleges that the ALJ's residual functional capacity assessment of Plaintiff is erroneous because the ALJ violated the treating physician rule by affording insufficient weight to Dr. Whelpley's finding that Plaintiff was severely limited in Plaintiff's ability to complete a normal workday without interruption, and some weight to Dr. Harding's opinion that Plaintiff had moderate limitations to Plaintiff's ability to maintain attention and concentration for extended periods, remain punctual within customary tolerances, complete a normal workday and week without interruption from psychologically-based symptoms, perform at a consistent pace without an unreasonable number of rest periods, interact appropriately with the general public, and accept instructions. Plaintiff's Memorandum at 7-21. Defendant maintains that Dr. Whelpley's finding that Plaintiff was severely limited in his ability to complete a normal workday or week is inconsistent with Dr. Whelpley's medical records of Plaintiff, wherein Plaintiff reported significant improvement in Plaintiff's symptoms. Defendant's Memorandum at 26-27. Defendant's motion on this issue is without merit.

**Residual functional capacity**

The so-called residual functional capacity or RFC, is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR[5] 96-8p; 1996 WL 374184, at *1. In making an RFC assessment, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on those facts, along with the claimant's subjective symptoms of pain and other asserted limitations. 20 C.F.R. §§ 404.1545, 416.945. The "RFC is not the *least* an individual can do despite his or her limitations, but the *most*." SSR 96-8p; 1996 WL 374184, at * 1 (italics in original). "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. If there is "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.* "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may the RFC be expressed in terms of the exertional levels of work,

---

[5] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

sedentary,[6] light, medium, heavy, and very heavy." *Id*. Although the RFC assessment is reserved for the commissioner, the assessment remains a medical determination that must be based on medical evidence of record, such that the ALJ may not substitute her own judgment for competent medical opinion. *Walker v. Astrue*, 2010 WL 2629832, at * 6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2), and 416.927(e)(2)), *report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010). The Second Circuit has upheld an RFC assessment where the ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where there was sufficient evidence in the record to permit the ALJ to assess the RFC, including years of treatment notes and evidence of the claimant's social and recreational activities. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 6-9 (2d Cir. Jan. 18, 2017). Moreover, where substantial evidence in the record supports the ALJ's RFC assessment, there is no "gap" in the medical record requiring the ALJ to further develop the record by obtaining an additional medical source statement from one of Plaintiff's treating physicians. *See Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. Jan. 28, 2013) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information. . . .")).

The burden to demonstrate functional limitations is on the Plaintiff. *See Reynolds v. Commissioner of Social Security*, 2019 WL 2020999, at *4 (W.D.N.Y. May

---

[6] Sedentary work involves lifting no more than 10 pounds at a time or occasionally lifting or carrying articles like docket files, ledgers and small tools.

8, 2019).  ALJs, however, must always give good reasons for assigning weight to medical source opinions.  *See Cunningham v. Colvin*, 2014 WL 6609497, at *6 (W.D.N.Y. Nov. 20, 2014) (ALJ must always give good reasons for the weight afforded to a medical source opinion).

**Treating physician rule**

As relevant, 20 C.F.R. § 416.927(f)(1) provides

> . . .. opinion[s] from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the opinion of an acceptable medical source, including the opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 416.927(f)(1).

The treating physician rule applies to disability claims filed before March 27, 2017, and, as a result, applies to Plaintiff's claim filed on January 16, 2015.  *See* 20 C.F.R. § 404.1527.  The Act requires ALJs to grant significant weight to treating physician opinions supported by medical evidence in the record, and requires treating physician opinions be granted "controlling weight" when the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(d)(2).  Treating physician opinions are not determinative, and granted controlling weight only when they are not inconsistent with other controlling evidence, 20 C.F.R. § 404.1527(d); *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002)), and the treating physician rule is

"even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." *See Santiago v. Barnhart,* 441 F.Supp.2d 620, 629 (S.D.N.Y. 2006). ALJs may not reject a treating physician opinion solely on inconsistencies between the physician's treatment notes and medical opinion. *See Balsamo v. Chater,* 142 F.3d 75,80 (2d Cir. 1999).

Here, the ALJ's reasons for discounting Dr. Whelpley's treating physician opinion are inconsistent with the treating physician rule and substantial evidence in the record. In particular, the ALJ afforded less weight to Dr. Whelpley's opinion on Plaintiff's inability to work by relying on Plaintiff's visits to Plaintiff's primary care physician Christian Wightman, M.D. ("Dr. Wightman") on November 18, 2013, for a viral infection with diarrhea and tiredness (R. 248-49), and on May 9, 2014, for a well-visit (R. 242-51), medical visits that are unrelated to Plaintiff's mental health. The ALJ's finding that Plaintiff's psychiatric symptoms significantly improved between June 15, 2015 and February 14, 2017 (R. 23) (referencing R. 263-90), is also inconsistent with substantial evidence in the record, as Plaintiff's visits to Dr. Whelpley between 2014 and 2017, support that even while Plaintiff was taking his Risperidone (antipsychotic) medication as prescribed, Plaintiff continued to experience visual and audio hallucinations one to two times each week on June 9, 2015 (R. 263), November 3, 2015 (R. 270), December 2, 2015 (R. 273), January 7, 2016 (R. 274), February 4, 2016 (R. 277), March 31, 2016 (R. 278), August, 24, 2016 (R. 284), and October 17, 2016 (R. 285), and on May 6, 2015, a therapist from Dr. Whelpley's office noted that Plaintiff's mother called to report

that Plaintiff was unable to differentiate reality from a hallucination, and that Plaintiff believed that something was attacking him and causing him pain. (R. 315). Significantly, Dr. Whelpley's finding that Plaintiff is unable to complete a normal workday or week without interruption from his schizophrenia is further supported by Plaintiff missing 18[7] appointments with Dr. Whelpley between June 15, 2015 to February 14, 2017 (R. 314-67), appointments that Plaintiff's mother testified she was forced to reschedule because Plaintiff was having a bad day denoted as Plaintiff not eating, bathing or dressing, and spending the day in a rocking motion. (R. 47-50). Although Plaintiff showed some improvement in his schizophrenia while incarcerated in the Allegheny County Jail for seven weeks in July 2015 (R. 324-25), "[a] claimant's ability to perform adequately when [he] is in a structured, supportive setting[] such as medical or psychiatric appointments, which have lowered psychological pressures and interpersonal demands – does not necessarily predict performance and the ability to cope in the competitive work environment." *See Callahan v. Berryhill*, 2018 WL 1616058, at *5 (W.D.N.Y. Apr. 4, 2018) (quoting SSR 85-15, 1985 WL 56857, at *6). Moreover, to the extent that the ALJ afforded more weight to Dr. Harding's finding that Plaintiff was able to work, Dr. Harding is a one-time non-examining disability examiner of Plaintiff's claim at the initial level of disability review. As Plaintiff's treating physician, Dr. Whelpley has a long treating history with Plaintiff and is therefore better positioned to evaluate Plaintiff's mental impairment. *See Nasca v. Colvin,* 216 F.Supp.3d 291, 297 (W.D.N.Y.2016) (quoting *Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir. 1993)). By

---

[7] The number of appointments Plaintiff missed excludes those rescheduled for transportation-related reasons.

concluding that Plaintiff's schizophrenia improved, the ALJ thereby improperly assumed the role of a treating physician, an error that requires remand. *See Suwen Zhang v. Berryhill*, 2018 WL 3082910, at *3 (W.D.N.Y. June 22, 2018) (citing *Wilson v. Colvin*, 213 F. Supp.3d 478, 490-91 (W.D.N.Y. 2016) (ALJ's reliance on his own lay opinion over the medical record serves as basis for reversing the Commissioner's decision)).

In accordance with the foregoing, Discussion, *supra*, at 13-15, REMAND is required to afford the ALJ the opportunity to further review the record in accordance with the treating physician rule. Upon such review, the ALJ, if required, should solicit additional testimony from a VE, and proffer hypotheticals to the VE that include any new limitations the ALJ deems relevant to Plaintiff's ability to function, and whether any jobs exist that an individual like Plaintiff would be capable of performing in the regional and national economies. Should the VE testify that no jobs exist that the Plaintiff would be capable of performing, the matter is also REMANDED for calculation of benefits.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 8) is GRANTED; Defendant's motion (Doc. No. 13) is DENIED. The matter is REMANDED to the ALJ for further proceedings consistent with this DECISION and ORDER. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  February 4, 2020
        Buffalo, New York